UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTATE OF LINDA FAYE JONES and
KISHUNDA S. JONES,

           Plaintiffs,

    vs.                                                    Case No. 16-cv-01235-LA

CHILDREN'S HOSPITAL AND HEALTH
SYSTEM, INC. PENSION PLAN,

           Defendant.

**DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

After spending more than a year arguing that the terms of the Children's Hospital and Health System, Inc. Pension Plan ("Children's Plan") require that Kishunda Jones receive a pension benefit, Plaintiffs have now, for the first time, shifted almost entirely to an argument that the benefit is required by statute. According to Plaintiffs, a provision in the tax code governing the timing of distributions under ERISA plans for tax purposes compels the Children's Plan to award benefits to Kishunda Jones.

This argument fails for many reasons. First, given ERISA's administrative exhaustion requirements, Plaintiffs may not attempt this "bait and switch" tactic and present arguments that they did not make to the Administrative Committee during their internal appeal. Second, the law is clear that the tax code cannot convey a substantive entitlement to benefits. Finally, the Children's Plan unequivocally complied with the tax law at issue. Accordingly, Plaintiffs' Motion for Summary Judgment should be denied, the Children's Plan's Motion for Summary Judgment should be granted, and this case should be dismissed.

# ARGUMENT

## I. Plaintiffs' Motion Should Be Denied Because They Failed to Comply with the Local Rules.

Plaintiffs did not file a separate Statement of Facts supporting their Motion for Summary Judgment, as required by Civil Local Rule 56(b)(1)(C). As noted in the local rules, this failure alone "constitutes grounds for the denial of the motion." Civil L.R. 56(b)(1)(C)(iii). This Court has denied summary judgment motions where a party is represented by counsel yet fails to comply with this requirement. *See Jacobs v. City of Milwaukee Police Dept.*, 2015 WL 5131131, *12, No. 14-cv-1016 (E.D. Wis. Sept. 1, 2015) ("[T]he defendants' summary judgment motion was not accompanied by 'a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.' Civil L.R. 56(b)(1)(C). And, the 'failure to submit such a statement constitutes grounds for denial of the motion.' Civil L.R. 56(b)(1)(C)(iii). As such, the Court is obliged to deny, in its entirety, the defendants' motion for summary judgment for failure to comply with the Civil Local Rules governing summary judgment."). And the Seventh Circuit has held that it is not an abuse of discretion to require strict compliance with local rules or to deny a motion solely on the basis of non-compliance. *See, e.g.*, *Bordelon v. Chi. Sch. Reform Bd.*, 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."). Given the presence of counsel, Plaintiffs' failure to comply with the local rules, and the consequence set forth explicitly in the rule, Plaintiffs' motion should be denied based on their failure to file the required statement of facts.

2
4825-2883-7446.1
Case 2:16-cv-01235-LA   Filed 04/24/17   Page 2 of 17   Document 23

**II. Plaintiffs' Belated Tax Code Argument Fails on Several Grounds.**

In their Motion for Summary Judgment, Plaintiffs argue for the first time that Kishunda Jones is entitled to benefits because the Children's Plan did not comply with requirements contained in the Internal Revenue Code relating to the timing of benefit distributions under an ERISA plan. This argument fails for several reasons. First, Plaintiffs may not raise an entirely new argument in litigation that they did not make to the plan administrator during the internal appeal. Second, case law is clear that a party may not rely on the tax code as a substantive basis for benefits under ERISA. Finally, the Internal Revenue Service has reviewed the plan language at issue in this case and confirmed that it complies with the requirements of the tax code provision in question. Accordingly, Plaintiffs have no basis to assert that the tax code, or the Children's Plan's alleged noncompliance with it, entitles Plaintiffs to a pension benefit.

> A. *Plaintiffs May Not Make an Argument that They Failed to Present to the Administrative Committee.*

Prior to filing a claim for benefits under ERISA, parties are required to exhaust their administrative remedies by filing a claim for benefits with the plan administrator and taking any available appeals under the plan. Though ERISA does not expressly require exhaustion of remedies, it does mandate that plans have a number of internal administrative procedures that must be offered to those claiming benefits under a plan. *See, e.g.*, 29 U.S.C. § 1133. "[B]ecause ERISA directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims, we have interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute." *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 360 (7th Cir. 2011); *see also Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1235 (7th Cir. 1997) ("Congress intended fund trustees to have primary responsibility for

3

claim processing, as evidenced by the specific requirement in § 503, 29 U.S.C. § 1133, of a claim and appeal procedure for every employee benefit plan. To make every claim dispute into a federal case would undermine the claim procedure contemplated by the Act.")[1]

One key purpose of the exhaustion requirement is that "[e]xhaustion . . . enables plan fiduciaries to assemble a factual record which will assist a court in reviewing their actions." *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996); *see also Edwards*, 639 F.3d at 361 ("Compelling parties to exhaust administrative remedies can help a court by requiring parties, in advance of bringing suit, to develop a full factual record and by enabling the court to take advantage of agency expertise. A primary reason for the exhaustion requirement is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies.") (internal quotation marks and citations omitted). By limiting parties in federal litigation to the arguments that they raised in the internal appeal process, courts have the benefit of a fully developed factual record that contains all documents relevant to the denial at issue. Conversely, allowing parties to raise new arguments that they did not make to the plan administrator may lead to an incomplete factual record that precludes adequate judicial review.

By raising a new argument in their brief that they did not previously make to the Children's Plan Administrative Committee, Plaintiffs have violated these exhaustion principles. Plaintiffs acknowledge that the Children's Plan provides the Administrative Committee with the

---

[1] "[A] plaintiff is excused from failing to pursue administrative remedies where 1) administrative remedies are not available or 2) pursuing those remedies would be futile." *Gallegos v. Mt. Sinai Medical Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000). There is no basis for applying either exception in this case. There were clearly administrative remedies available to Plaintiffs, as evidenced by the arguments they did in fact raise to the plan administrator. Further, "for a party to come within the futility exception, he must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Zhou v. Guardian Life Ins. Co.*, 295 F.3d 677, 680 (7th Cir. 2002).

4
4825-2883-7446.1
Case 2:16-cv-01235-LA    Filed 04/24/17    Page 4 of 17    Document 23

discretion necessary to confer deferential review on the denial of benefits. (*See* Pls.' Br. at 11-12.) The consequence of this discretion is that judicial review of the denial of benefits is "limited to the information submitted to the plan's administrator" and "limited to the evidence that was submitted in support of the application for benefits." *Perlman v. Swiss Bank Corp. Plan*, 195 F.3d 975, 982 (7th Cir. 1999); *see also Krolnik v. Prudential Ins. Co.*, 570 F.3d 841, 843 (7th Cir. 2009) ("When review is deferential – when the plan's decision must be sustained unless arbitrary and capricious – then review is limited to the administrative record.") If the Court reaches the substance of this tax code argument, however, it may need to consider information and evidence outside the administrative record. (*See* Section II.C, *infra*.) This is *solely* because Plaintiffs did not argue anything about the tax code until they filed their summary judgment brief – 18 months after Kishunda Jones first sought benefits from the Children's Plan.

Had Plaintiffs raised this tax code argument during the administrative process, the Administrative Committee could have explained why the argument was mistaken, provided the relevant evidence to Plaintiffs and for the administrative record, and possibly forestalled this entire litigation. This is precisely what ERISA contemplates.[2] By short-circuiting this process, Plaintiffs violated ERISA's exhaustion requirements. Accordingly, Plaintiffs should be barred from advancing their new tax code argument at this belated stage.

    B. *Neither the Tax Code nor ERISA Provides Plaintiffs with a Substantive Entitlement to Death Benefits Under the Children's Plan.*

Even if the Court were to consider Plaintiffs' argument on the merits, it still fails. Essentially, Plaintiffs' argument boils down to the claim that the Children's Plan promises to

---

[2] Indeed, this is exactly what occurred with another argument that Plaintiffs made during the internal appeal process. Plaintiffs argued that benefits were owed due to certain additional ERISA language that related only to individual account plans, such as 401(k) plans, and not to pension plans, 29 U.S.C. § 1055(b)(1)(C). (CHHS 183-85.) The Administrative Committee pointed out this issue in its response letter. (CHHS 189-90.) Plaintiffs have not raised this issue in this litigation.

5

4825-2883-7446.1

Case 2:16-cv-01235-LA   Filed 04/24/17   Page 5 of 17   Document 23

comply with Section 401(a)(9) of the tax code and then fails to do so. As set forth below in Section II.C, the Children's Plan demonstrably does comply with the requirements of Section 401(a)(9), which does not require a pension plan to provide survivor benefits to a non-spouse beneficiary. But perhaps more fundamentally, Section 401(a)(9) deals only with the tax consequences arising from the timing of benefit distributions, not whether a potential beneficiary is entitled to such distributions in the first place. Accordingly, the tax code cannot provide a substantive right to an ERISA benefit. Further, ERISA itself makes clear that pension plans need not provide benefits under the circumstances of this case. In short, there is no statutory provision requiring the Children's Plan to provide a death benefit to Kishunda Jones.

>1. Section 401(a)(9) of the Tax Code Relates Only to the Timing of Distributions from a Retirement Plan, not Whether Such Distributions Are Owed.

Plaintiffs completely misunderstand the purpose of Section 401(a)(9), which is solely to address the *timing* of distributions from a retirement plan. Because contributions to a qualified retirement plan are tax-deferred, participants, beneficiaries, and plans all have an incentive to stretch out the time period over which distributions are paid to avoid the tax liability on the payment. "The purpose of § 401(a)(9) is to limit the extent to which employees and their beneficiaries may use qualified plans as tax shelters longer than is reasonably necessary to accomplish the objective of providing retirement income. Tax benefits for qualified plans are not meant to be a means of building an estate to pass along to children and grandchildren." Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates & Gifts* ¶ 61.13 (3d rev. ed. 2005). Thus, for example, if a pension plan allows a participant to select a benefit that provides a large benefit to the participant's granddaughter that does not start until the granddaughter's retirement, thus attempting to extend the tax-deferred nature of the plan benefits for decades into

6

the future, the plan is no longer a "qualified" plan and loses *all* tax-deferred status. *See* 26 U.S.C. § 401(a)(9)(B).

In other words, by its plain language Section 401(a)(9) has nothing to do with *whether* a beneficiary is entitled to a benefit if a participant dies, but rather only *when* such a benefit must be paid out if one is owed, and if the plan wishes to maintain tax-deferred status. (This makes sense, given that Section 401(a)(9) is part of the tax code and not ERISA.) Accordingly, Plaintiffs' repeated referrals to when benefits "must be distributed," when benefits "will be distributed," or when "distributions must commence" from the statute and its regulations do not address the underlying question of whether benefits are owed in the first place. *Every single reference* that Plaintiffs cite to this effect relates solely to the timing of distributions, not the underlying substantive question of whether Kishunda Jones is entitled by tax law to receive a distribution in the first place. On multiple occasions, Plaintiffs truncated these citations to avoid revealing that they relate only to *when* distributions must occur. Below is every reference from Section 401(a)(9) and its related documents that purport to establish that Kishunda Jones is owed a benefit. The italicized language in each passage demonstrates that the provision relates solely to the timing of distributions:

- "will be distributed to such employee *not later than the required beginning date*," I.R.C. § 401(a)(9)(A)(i) (emphasis added);

- "will be distributed, *beginning not later than the required beginning date, in accordance with regulations, over the life of such employee or over the lives of such employee and a designated beneficiary (or over a period not extending beyond the life expectancy of such employee or the life expectancy of such employee and a designated beneficiary)*," I.R.C. § 401(a)(9)(A)(ii) (emphasis added);

- "will be distributed *at least as rapidly as under the method of distributions being used under subparagraph (A)(ii) as of the date of his death*," I.R.C. § 401(B)(i) (emphasis added);

7

4825-2883-7446.1

Case 2:16-cv-01235-LA    Filed 04/24/17    Page 7 of 17    Document 23

- "will be distributed *within 5 years after the death of such employee*," I.R.C. § 401(B)(ii) (emphasis added);

- "must be made *in accordance with one of the methods described in section 401(a)(9)(B)(ii) or (iii) and (iv)*," 26 C.F.R. § 1.401(a)(9)-3(A-1) (emphasis added);

- "distributions must commence *in or before the end of the calendar year immediately following the calendar year in which the employee died*," 26 C.F.R. § 1.401(a)(9)-3(A-3) (emphasis added);

- "distributions must commence *on or before the later of the end of the calendar year immediately following the calendar year in which the employee died; and the end of the calendar year in which the employee would have attained 70 ½*," *id.* (emphasis added);

- "TEFRA required the distribution of the entire interest of the employee, *in the taxable year the participant attains age 70 ½ or, in the case of a non-key employee, retires, if later*," IRS, *Minimum Required Distributions the Final Regulations under Code Section 401(a)(9)* (emphasis added).

Thus, for example, when Plaintiffs cite to the tax code's purported requirement that "the entire interest of the employee will be distributed within five years," they ignore the underlying question: What is Linda Jones' "entire interest" after her death before the commencement of benefits?

Of course, the tax code cannot provide any guidance on this substantive issue, as only ERISA – and not Section 401 of the tax code – determines whether an individual is entitled to a benefit under a retirement plan regulated by ERISA. *See, e.g., Reklau v. Merchants Nat'l Corp.*, 808 F.2d 628, 631 (7th Cir. 1986) ("There is no basis . . . in ERISA to find that the provisions of IRC § 401 – which relate solely to the criteria for tax qualification under the Internal Revenue Code – are imposed on pension plans by the substantive terms of ERISA.") Instead, if Kishunda Jones has a substantive entitlement to Linda Jones' pension benefit that is imposed by federal law, that benefit must be found in ERISA.

2. ERISA is the Only Potential Source of Substantive Entitlement to a Pension Benefit for Kishunda Jones, but ERISA Makes Clear that No Benefits Are Required Here.

Though Plaintiffs do not argue that ERISA itself entitles them to a pension benefit, it is nevertheless important to demonstrate that ERISA clearly and intentionally does not mandate a benefit in this circumstance. This only further demonstrates that the 401(a)(9) timing provisions do not mandate a benefit where ERISA itself states that no benefit is required. In effect, Plaintiffs are trying to mandate a pension benefit through the tax code that was intentionally excluded from ERISA.

As an initial matter, benefits under ERISA may be divided into two buckets: those that are forfeitable and those that are non-forfeitable. Benefits that are non-forfeitable include any amounts that the employee herself has contributed to her retirement, as distinguished from amounts contributed by the employer.[3] 29 U.S.C. § 1053(a)(1). Likewise, vested benefits that a participant has earned are ordinarily non-forfeitable when they are due to the participant, as distinct from a beneficiary. 29 U.S.C. § 1053(a)(1), (a)(2)(A). However, benefits *are* forfeitable where: (1) the money at issue is from employer contributions; (2) the participant dies; and (3) the participant has no surviving spouse. 29 U.S.C. § 1053(a)(3)(A) ("A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that it is not payable if the participant dies (except in the case of a survivor annuity which is payable as provided in section 1055 of this title)."); *see also* Jeffrey D. Mamorsky, *Employee Benefits Law: ERISA and Beyond* § 3.02(2)(g) (2015) ("[D]eath benefits are not always required as a matter of law, and upon the death of a participant a plan may—with certain

---

[3] In this case, all contributions to the Children's Plan were made by Children's Hospital. The Children's Plan did not require Linda Jones to make any contributions, nor did she make any contributions. (Children's Plan, § 7.1 (CHHS 37); CHHS 166.)

important exceptions, such as the payment of a survivor annuity—provide for the 'forfeiture' of benefits otherwise vested."). These are precisely the terms of the Children's Plan: when a participant dies before benefits commence, the participant's beneficiary is automatically the participant's "surviving spouse, if any." (Defendant's Statement of Proposed Material Undisputed Facts ("SMF"), ¶¶ 36-38.) This ensures that if the participant has a surviving spouse, the spousal survivor annuity required by ERISA is paid. But if, as in the present case, the participant has no surviving spouse, the Plan does not provide for a benefit, and the participant's benefit is forfeited. ERISA expressly allows plans to treat funds in this manner. 29 U.S.C. § 1053(a)(3)(A).

Likewise, ERISA mandates other death benefits, but does not mandate the specific death benefit Plaintiffs claim is owed here. The omission of a mandatory non-spousal survival benefit in ERISA, where other spousal survival benefits are expressly required, compels the conclusion that there is no such mandatory non-spousal benefit. First, ERISA requires that pension plans offer a specific type of "preretirement survivor annuity": "in the case of a vested participant who dies before the annuity starting date *and who has a surviving spouse*, a qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant." *See* 29 U.S.C. § 1055(a)(2) (emphasis added). If Congress wished to extend the requirement that plans offer preretirement survivor annuities to other parties, it very easily could have omitted the words "and who has a surviving spouse." If those words are omitted, then ERISA *would* mandate the benefit that Plaintiffs are seeking in this case. As it stands, however, Plaintiffs are attempting to read this key language directly out of ERISA by pointing to tax code provisions regulating the timing of pension distributions.

Finally, Congress included a mandate for "individual account plans" (i.e., 401(k) plans and not "defined benefit" pension plans) to provide a death benefit to non-spouse beneficiaries. This statute calls for such account balance plans to "provide[] that the participant's nonforfeitable accrued benefit . . . is payable in full, on the death of the participant, to the participant's surviving spouse (or, *if there is no surviving spouse . . . to a designated beneficiary*)." 29 U.S.C. § 1055(b)(1)(C)(i) (emphasis added). Again, had Congress wished to impute this mandate to all plans, including pension plans, it would not have limited the statute to "individual account plans," but rather could have referred simply to all "retirement plans." The fact that Congress chose not to do so demonstrates that no such requirement exists.

In short, nothing in either Section 401(a) of the tax code or in ERISA required the Children's Plan to provide a death benefit except for the surviving spouse death benefit that the Children's Plan provides. Accordingly, there is no statutory basis to impose a requirement for such a benefit that is not found in the terms of the plan itself.

> C. *The Internal Revenue Service, Charged with Interpreting the Statutory Language at Issue, Has Reviewed the Children's Plan and Ruled that it Complies with the Requirements of Section 401(a)(9).*

Even if the tax code could theoretically provide a substantive right to benefits that Plaintiffs could enforce against the Children's Plan, notwithstanding the fact that it relates solely to tax treatment, Section 401(a)(9) provides no such right. In addition to the legal analysis set forth above, the very language at issue from the Children's Plan – which clearly states that if the participant dies before benefits commence the only death benefit payable is to the surviving spouse, if any – has been reviewed and approved by the Internal Revenue Service ("IRS"), which has certified that the language complies with the requirements of Section 401(a). (Declaration of

11

Leigh Riley ("Riley Decl."), Exs. A-C.[4]) Accordingly, Plaintiffs cannot now claim that the Children's Plan somehow violates those same requirements.

As noted above, retirement plans that comply with the requirements of Section 401 receive favorable tax treatment. To assist plans with determining whether they qualify, the IRS has developed a "Determination Letter" program, wherein plans submit their language to the IRS for a determination as to whether the plans' written provisions comply with Section 401. *See* IRS, *Favorable Determination Letter* 1, https://www.irs.gov/pub/irs-pdf/p794.pdf (last visited April 12, 2017). "A favorable determination letter indicates that, in the opinion of the IRS, the terms of the plan conform to the requirements of Code Section 401(a)." *Id.*; *see also* 26 C.F.R. § 601.201(a)(3) ("A determination letter is a written statement issued by a district director in response to a written inquiry by an individual or an organization that applies to the particular facts involved, the principles and precedents previously announced by the National Office. A determination letter is issued only where a determination can be made on the basis of clearly established rules as set forth in the statute, Treasury decision, or regulation, or by a ruling, opinion, or court decision published in the Internal Revenue Bulletin."). There are two subsections of Section 401(a), subsections (4) and (26), that a party cannot have qualified via the determination letter, but all other sections, including Section 401(a)(9), may be confirmed this way. *Favorable Determination Letter* 2.

In this case, when the Children's Plan was amended to add Section 6.9 (the section mandating that a participant's beneficiary be the "surviving spouse, if any" if the participant dies

---

[4] For the reasons set forth above in Section II.A, the Children's Plan submits that the Court should not even consider Plaintiffs' tax code argument, as it was not presented to the Administrative Committee during the internal claim process. However, to the extent that the Court considers the argument, it should also consider this extra-record evidence submitted in response, which the Children's Plan could have submitted during the internal claim process had this argument been raised at that time.

12
4825-2883-7446.1

Case 2:16-cv-01235-LA Filed 04/24/17 Page 12 of 17 Document 23

before distributions begin), counsel for the Children's Plan submitted a request for a favorable determination letter to the IRS. (Riley Decl., Ex. A.) Attached to that letter and also submitted to the IRS was the Administrative Committee's resolution passing the language in Section 6.9 (then denominated Section 6.8A). (*Id.*, Ex. B.) The IRS reviewed the submission and "made a favorable determination on the plan . . . based on the information . . . supplied." (*Id.*, Ex. C.)

In other words, the agency tasked with interpreting and enforcing the tax code reviewed Section 6.9 of the Children's Plan and concluded that it complied with Section 401(a)(9) of the tax code. Not only that, the IRS necessarily concluded that the Children's Plan complied with Section 401 "on the basis of *clearly established rules* as set forth in the statute, Treasury decision, or regulation, or by a ruling, opinion, or court decision published in the Internal Revenue Bulletin." 26 C.F.R. § 601.201(a)(3) (emphasis added). In short, the IRS had no doubts that the Children's Plan complied with the tax code, and Plaintiffs provide no reason to second guess that determination.

## III. The Denial of Benefits Was Neither Arbitrary Nor Capricious.

As almost an afterthought, Plaintiffs argue at the conclusion of their brief that the denial of benefits was contrary to the plain language of the Children's Plan. This argument is effectively a mishmash of various claims, none of which has any merit.

First, Plaintiffs argue that "[a]ny interpretation of a pension plan that treats unmarried participants differently than married participants, especially when both participants have a nonforfeitable vested interest in their pension benefits, defies common sense and is arbitrary and capricious." (Pls. Br. at 22.) But as set forth in detail above, the entire ERISA regime is centered around the concept that surviving spouses are treated differently and more favorably than other types of beneficiaries. *See, e.g.*, 29 U.S.C. § 1055(a)(2); *Boggs v. Boggs*, 520 U.S.

13
4825-2883-7446.1
Case 2:16-cv-01235-LA  Filed 04/24/17  Page 13 of 17  Document 23

833, 843 (1997) ("The statutory object of the qualified joint and survivor annuity provisions, along with the rest of § 1055, is to ensure a stream of income to *surviving spouses*.") (emphasis added). Plaintiffs may disagree with this policy determination, but that disagreement is no basis to set aside the terms of ERISA or conclude that a plan that complies with those terms is arbitrary and capricious.

Second, Plaintiffs argue that because a "death benefit" is an "incidental benefit" within the meaning of ERISA, a benefit must be distributed under the terms of Section 401(a)(9) of the tax code. (Pls. Br. at 23.) Admittedly, it is difficult to understand the entirety of this argument. Nevertheless, as set forth above, the tax code deals solely with the timing of distributions that are otherwise required under ERISA or a plan's terms. The tax code does not create any substantive rights to payments in the first instance.

Finally, in the last three pages of their brief, Plaintiffs at last raise the argument that was nearly the entire basis of their request for benefits before the Administrative Committee. This argument proceeds as follows:

- Linda Jones was "vested" in the Children's Plan, providing her with a "nonforfeitable interest in [her] benefits, if any under the Plan";

- Linda Jones was eligible for an early retirement pension because she was at least 55 years old and had completed five years of Service for Children's Hospital; and

- Under the terms of the Children's Plan, Linda Jones was eligible to elect a ten-year certain life annuity.

The Children's Plan does not dispute any of these points, but they are all entirely irrelevant. The Children's Plan in fact informed Linda Jones that she was eligible for early retirement, calculated her pension benefit, and assisted her in completing the benefit application forms.

But the relevant question is what right *Kishunda Jones* has, if any, to *Linda Jones'* pension benefits. And just as the statutory references that Plaintiffs cite to do not address this

14

question, neither do the Plan terms Plaintiffs reference. While Linda Jones had a personal "nonforfeitable" interest in her pension benefits, ERISA is clear that such plans need not make such benefits payable to beneficiaries (except for surviving spouses). *See* 29 U.S.C. § 1053(a)(3)(A) ("A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that it is not payable if the participant dies (except in the case of a survivor annuity which is payable as provided in section 1055 of this title).") So the fact that Linda Jones' interest was nonforfeitable does not address the question of what happens upon her death.

Had Linda Jones died after benefits commenced, it is undisputed that Kishunda Jones would have been entitled to receive any remaining benefits under the form of benefit that Linda Jones selected. But, sadly, that is not what occurred. Unfortunately, Linda Jones died before her benefits commenced. (*See* SMF, ¶¶ 25-27, 30-33.) Accordingly, the relevant question is: What happens to Linda Jones' benefit when she dies before the commencement of benefits?

The Children's Plan is clear on that point. The only benefit set forth in the Children's Plan when a participant dies before the commencement of benefits is the surviving spouse death benefit set forth in Section 4.4. (SMF, ¶ 35.) To further demonstrate that this is the only potential benefit at issue in these circumstances, the Children's Plan states that "if a participant dies before the date distributions begin," that participant's designated beneficiary "is limited under the terms of this Plan to the Participant's surviving Spouse, if any." (SMF, ¶ 36.) To further clarify matters and to eliminate any confusion, the Children's Plan further states that "[i]n the case of a Participant who dies prior to the date distributions begin, the Participant's designated beneficiary will be his or her surviving Spouse, if any, pursuant to the terms of Section 4.4," the surviving spouse death benefit. (SMF, ¶ 37.) The Summary Plan Description

15

4825-2883-7446.1

Case 2:16-cv-01235-LA    Filed 04/24/17    Page 15 of 17    Document 23

likewise makes clear that the Children's Plan only "provides a measure of financial protection *for your spouse* if you die after becoming entitled to a pension but before your payments begin." (SMF, ¶ 41 (emphasis added).) Because Linda Jones died prior to the distribution of her pension benefits, the Children's Plan (1) unequivocally limited her designated beneficiary to her surviving spouse and (2) unequivocally limited her benefit options to the surviving spouse death benefit.

Plaintiffs concoct an argument that the Children's Plan should be read to apply the "surviving spouse" language only if the participant actually has a surviving spouse and otherwise to ignore it completely and allow the participant to choose whatever designated beneficiary she pleases. But this interpretation is wildly inconsistent with the terms of the plan, which provide only one form of benefit where the participant dies before benefits are distributed. In effect, Plaintiffs are asking this Court to read a new form of benefit into the terms of the Children's Plan that does not otherwise exist under its written terms. Moreover, even if Plaintiffs' proposed interpretation were a *reasonable* reading of the Children's Plan (which it is not), this alone does not help Plaintiffs. Rather, the operative question is whether the Children's Plan's contrary interpretation is *unreasonable*. Only if the Children's Plan's interpretation of its language is "downright unreasonable" could Plaintiffs set aside the denial of benefits. *Killian v. Concert Health Plan*, 680 F.3d 749, 755 (7th Cir. 2012). Given the plain language of the Children's Plan regarding the benefits available under the Plan and the beneficiaries dictated by the terms of the Plan, Plaintiffs cannot make this heightened showing.

16

4825-2883-7446.1

Case 2:16-cv-01235-LA   Filed 04/24/17   Page 16 of 17   Document 23

## CONCLUSION

For the reasons set forth above and in the Children Plan's initial brief, the Children's Plan respectfully requests that this Court grant its Motion for Summary Judgment, deny Plaintiffs' Motion for Summary Judgment, and dismiss Plaintiffs' claims with prejudice.

Dated: April 24, 2017

Respectfully submitted,

**FOLEY & LARDNER LLP**

/s/ Ryan N. Parsons
Carmen N. Couden
Ryan N. Parsons
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
414.297.5568 (CNC)
414.297.5863 (RNP)
414.297.4900 (Facsimile)
ccouden@foley.com
rparsons@foley.com
Attorneys for Defendant